IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| RUSSELL THOMPSON AND DEMETRIUS MCCHESTER, § § § | |
| Plaintiffs, § § | |
| v. § | Civil Action No. 7:22-cv-00014-O |
| § § | |
| TROOPER WILL RICHTER, et al., § § § | |
| Defendants. § | |

## ORDER AND OPINION

Before the Court are Defendant Trooper Mark Strange's Motion to Dismiss (ECF No. 14), filed June 17, 2022; Defendant Trooper Will Richter's Motion to Dismiss (ECF No. 15), filed June 17, 2022; Defendants Director and Colonel Steve McGraw, Lieutenant Dwight Mathis, Chief Orlando Alanis, Lieutenant Colonel Jeoff Williams, Chief Michelle Farris, and Regional Director Joe Longway's Motion to Dismiss (ECF No. 18), filed July 5, 2022; Plaintiffs' Response to Troopers Strange and Richter's Motions (ECF No. 20), filed July , 2022; and Plaintiffs' Response to the Supervisory Defendants' Motion (ECF No. 21), filed July 25, 2022. For the reasons discussed below, the Court finds that the Motions should be, and are, hereby **GRANTED in part** and **DENIED in part**.

    **I.**    **Factual Background[1]**

In the early morning hours of September 23, 2020, Plaintiffs Russell Thompson and Demetrius McChester started driving from Las Vegas, Nevada, back to New Boston, Texas, where they reside. McChester was driving Thompson's 2019 Mercedes Benz CLS250. Defendant

---

[1] The Court's recitation of the facts is taken from Plaintiffs' Amended Complaint. *See* Am. Compl. ECF No. 12. At the 12(b)(6) stage, these facts are taken as true and viewed in the light most favorable to the plaintiff. *See Sonnier v. State Farm Mut. Auto. Ins.*, 509 F.3d 673, 675 (5th Cir. 2007).

Trooper Will Richter noticed the Mercedes and followed the vehicle for a short distance before activating his emergency lights to signal McChester to pull over. McChester complied, and when Trooper Richter approached the vehicle, he told McChester that the reason for the stop was because of speeding.

Trooper Richter obtained both McChester and Thompson's drivers' licenses. He then asked McChester to exit the Mercedes. Once McChester had exited the vehicle, Trooper Richter asked him multiple questions regarding where the pair were driving from, going to, and with whom they had associated during their trip. McChester answered all of Trooper Richter's questions. Trooper Richter then asked Thompson similar questions, which Thompson answered. Trooper Richter then asked the men if he could search the Mercedes, to which Thompson said no.

At this point, ten minutes into the traffic stop, Trooper Richter went back to his patrol car to request a cover unit and a K-9 unit to conduct a free air sniff. He had yet to run a criminal background check on either man.

Twenty minutes into the traffic stop, Trooper Richter returned to the Mercedes and continued to question McChester and Thompson. Thirty minutes into the stop, Plaintiffs state Trooper Richter asked McChester if he had any weapons on him. He told McChester that he was detained and that he needed to search McChester for officer safety purposes. Forty minutes into the stop, the K-9 Unit arrived, and Defendant Trooper Mark Strange and his K-9 conducted the open-air sniff.

After circling the Mercedes three times, the K-9 alerted to the front of the vehicle, alerting to the smell of marijuana, cocaine, methamphetamine, or heroin. Trooper Strange then searched the trunk of the vehicle and located a loaded handgun. Trooper Richter ran a check to see if there

was any criminal conduct connected with the handgun and found none. At this point, McChester and Thompson had been stopped for over an hour.

Trooper Richter then returned to his patrol car and checked Thompson's criminal background. His search revealed Thompson's criminal history for crimes in Clark County, Nevada; Bell County, Texas; and the state of Georgia. Thompson had been charged with felonies but had no felony convictions on his record. Trooper Richter arrested Thompson for being a felon in possession of a handgun. After arresting Thompson, Trooper Richter released the Mercedes to McChester. Trooper Richter did not give McChester a speeding ticket nor a ticket for driving with an expired driver's license.

Thompson spent days following the traffic stop in jail. The Wichita County Prosecutor's Office then dismissed the charges against Thompson, as there was no underlying felony conviction on which the felon in possession of a firearm charge could stand.

Plaintiffs filed this action on February 28, 2022. They filed an Amended Complaint on May 9, 2022. In their Amended Complaint, Plaintiffs claim six causes of action, alleging:

(1) Trooper Richter is liable under 42 U.S.C. § 1983 for violating Plaintiffs' Fourth Amendment rights by utilizing the alleged speeding violation as a pretext to seize Plaintiffs and by detaining Plaintiffs beyond the necessary time to effectuate and conclude the allegedly pretextual traffic stop.

(2) Troopers Richter, Strange, and John Doe are liable under 42 U.S.C. § 1983 for violating Plaintiffs' Fourth Amendment rights by detaining Thompson beyond the necessary time to effectuate and conclude the allegedly pretextual traffic stop, and by arresting Thompson without probable cause.

(3) Troopers Richter, Strange, and John Doe are liable under 42 U.S.C. § 1983 for depriving Thompson of his Second Amendment right to own and bear arms.

(4) Troopers Strange and John Doe are liable for failing to intervene when Trooper Richter allegedly violated Plaintiffs' constitutional rights.

(5) Director and Colonel Steve McGraw, Lieutenant Dwight Mathis, Chief Orlando Alanis, Lieutenant Colonel Jeoff Williams, Chief Michelle Farris, and Regional Director Joe Longway are liable for failing to properly train Troopers Richter, Strange, and John Doe.

(6) Trooper Richter is liable under 42 U.S.C. § 1983 for violating Plantiffs' Fourteenth Amendment rights.

Trooper Strange filed a Motion to Dismiss all claims against him on June 17, 2022.[2] Also, on June 17, 2022, Trooper Richter filed a Partial Motion to Dismiss, moving to dismiss only Plaintiff McChester's claims against him.[3] Director and Colonel Steve McGraw, Lieutenant Dwight Mathis, Chief Orlando Alanis, Lieutenant Colonel Jeoff Williams, Chief Michelle Farris, and Regional Director Joe Longway ("the Supervisory Defendants") filed a Motion to Dismiss all claims against them on July 5, 2022.[4] All three motions are now ripe for the Court's review.

## II. Legal Standard

### A. 12(b)(6) Motion to Dismiss

Rule 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

---

[2] Strange Mot., ECF No. 14,
[3] Richter Mot., ECF No. 15.
[4] Supervisory Defs. Mot., ECF No. 18.

*Twombly*, 550 U.S. 544, 555 (2007)). If a plaintiff fails to satisfy Rule 8(a), the defendant may file a motion to dismiss under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted."

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (cleaned up). A court may not accept legal conclusions as true. *Id.* at 678–79. When well-pleaded factual allegations are present, a court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.*

    B. <u>Qualified Immunity</u>

All Defendants in this case assert the affirmative defense of qualified immunity. The doctrine of qualified immunity protects government officials sued pursuant to 42 U.S.C. § 1983 "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* at 815. This

doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Courts generally apply the two-pronged analysis established in *Saucier v. Katz*, 533 U.S. 194 (2001), in determining whether a government official is entitled to qualified immunity for an alleged constitutional violation. The first prong of the *Saucier* analysis asks whether the facts alleged or shown are sufficient to make out a violation of a constitutional or federal statutory right. *Saucier*, 533 U.S. at 201. If the record sets out or establishes no violation, no further inquiry is necessary. On the other hand, if the plaintiff sufficiently pleads or establishes the violation of a constitutional or federal statutory right, the Court then turns to the second prong and asks whether the right was clearly established at the time of the government official's alleged misconduct. *Id.* When considering this second prong, the relevant question is whether a reasonable officer could have believed that his conduct was lawful in light of clearly established law and the information possessed by him. *Reese v. Anderson*, 926 F.2d 494, 499 (5th Cir. 1991). If public officials or officers of "reasonable competence could disagree [on whether the conduct is legal], immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *Gibson v. Rich*, 44 F.3d 274, 277 (5th Cir. 1995) (citing *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994)). Courts must consider "whether the violative nature of particular conduct is clearly established" and must undertake this inquiry "in light of the specific context of the case, not as a broad general proposition." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (citations and internal quotations marks omitted).

The Supreme Court has clarified that it is no longer mandatory for courts to consider the two prongs set out in *Saucier* in order, although the Court noted that it may be beneficial to do so. *Pearson*, 555 U.S. at 236. Under *Pearson*, courts are now permitted to exercise their sound

6

discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first, in light of the circumstances in the particular case at hand. *Id.*

**III.   Analysis**

   A.   Defendant Trooper Richter

Defendant Trooper Richter moves to dismiss all claims asserted against him by Plaintiff McChester. He argues he is entitled to qualified immunity as McChester fails to establish any constitutional violation assignable to Trooper Richter and fails to demonstrate objective unreasonableness of Trooper Richter's conduct in light of settled law.

McChester brings a Fourth Amendment claim against Trooper Richter under 42 U.S.C. § 1983.[5] McChester alleges that Trooper Richter deprived him of his Fourth Amendment right to be free from unreasonable government searches and seizure "by not only utilizing the alleged speeding violation as a pretext to seize Plaintiffs, but by detaining Plaintiffs beyond the necessary time to effectuate and conclude the pretextual traffic stop."[6]

A traffic stop for a suspected violation of law is a "seizure" of the occupants of the vehicle and therefore must be conducted in accordance with the Fourth Amendment. *Heien v. North Carolina*, 574 U.S. 54, 60 (2014). In the Fifth Circuit, challenges to traffic stops are processed under a two-step inquiry. *See United States v. Bams*, 858 F.3d 937, 942 (5th Cir. 2017); *United States v. Andres*, 703 F.3d 828, 832 (5th Cir. 2013). The district court first must determine "whether the stop was justified at its inception," that is, whether the officer had an "objectively reasonable suspicion" that a traffic offense occurred or was occurring. *See Bams*, 858 F.3d at 942. If the stop was justified, the next step is to determine "whether the officer's subsequent actions were reasonably related in scope to the circumstances that justified the stop of the vehicle in the

---

[5] Am Compl. ¶ 65, ECF No. 12.
[6] *Id.*

first place." *Id.* (quoting *Andres*, 703 F.3d at 832). A traffic stop must "last no longer than is necessary to effectuate the purpose of the stop, unless further reasonable suspicion, supported by articulable facts, emerges." *Id.* (quoting *Andres*, 703 F.3d at 832). Reasonable suspicion is defined as "a particularized and objective basis for suspecting the particular person stopped" of breaking the law. *Heien*, 574 U.S. at 536.

In this case, the parties do not dispute that Thompson was speeding or that the initial stop was not justified. However, they do dispute whether Trooper Richter had reasonable suspicion to extend the traffic stop for longer than it reasonably should have taken for him to complete the tasks typically associated with a traffic infraction.

Via the Amended Complaint, less than ten minutes into the traffic stop, Trooper Richter (1) had both men's drivers' licenses; (2) knew the car was insured; (3) knew the men were related; (4) knew where the men currently lived; and (5) knew that they had been in Las Vegas, Nevada.[7] Other than running a computer criminal check on their licenses, Trooper Richter had done everything needed to complete the traffic stop. The question is whether there was reasonable suspicion <u>at that point</u> to prolong the stop, calling for the K-9 sniff and further questioning Plaintiffs about matters unrelated to the traffic stop.

Trooper Richter claims he received inconsistent information about Plaintiffs' travels and where Thompson lived, giving him reasonable suspicion to call for the K-9 sniff. The only inconsistencies reflected in the Complaint were that McChester told Trooper Richter both men had lived in New Boston all their lives, except for when Thompson was in the Army, and Thompson said he had lived in Georgia when he was working as a commercial trucker.[8] McChester told Trooper Richter the men had been in Long Beach and stopped through Las Vegas on their way

---

[7] Am. Compl. ¶ 31.
[8] *Id.*

8

home while Thompson simply said the men were driving from Las Vegas.[9] Also, Trooper Richter, when calling for the K-9 sniff, told dispatch that the navigation in the vehicle indicated the two were travelling to Memphis, Tennessee, not New Boston, Texas, as the men said.[10]

At the point Trooper Richter called for the K-9 sniff, the only articulated facts potentially giving rise to reasonable suspicion to prolong the stop and call for the K-9 sniff were the inconsistencies in Plaintiffs' answers and the discrepancy between the men's stated travel plans and what was noted on the car's navigation. The Fifth Circuit has explained that the reasonable suspicion inquiry is a "totality of the circumstances" analysis, where "the proper question is whether or not the entire set of circumstances, taken together, created reasonable suspicion of criminal activity." *United States v. Pack*, 612 F.3d 341, 358 (5th Cir. 2010). Minor inconsistencies in answers, however, do not give rise to reasonable suspicion. *See United States v. Estrada*, 459 F.3d 627, 631 (5th Cir. 2006) ("Mere 'uneasy feelings' and inconsistent stories between a driver and a passenger do not constitute articulable facts that support a reasonable suspicion of [criminal activity]."); *see also United States v. Spears*, 636 F. App'x 893, 902 (5th Cir. 2016) ("[M]inor, insignificant, illusory, or reconcilable inconsistencies in a [suspect's] story are not probative of criminal activity"). Inconsistent answers have been held to create reasonable suspicion only in cases where the inconsistent answers are but one factor relied upon to establish reasonable suspicion and/or when the inconsistencies are serious or seemingly intentionally deceptive. *Pack*, 612 F.3d at 360–61; *see also United States v. Brigham*, 382 F.3d 500, 508–09 (5th Cir. 2004). "[T]he question is whether it was reasonable for someone in [the officer's] shoes to view the answers as suspicious." *United States v. Pena–Gonzalez*, 618 Fed.Appx. 195, 200 (5th Cir. 2015).

---

[9] *Id.* at ¶¶ 26, 29.
[10] *Id.* at ¶ 34.

When a defendant asserts a qualified immunity defense at the motion to dismiss stage, the district court is required to apply Rule 8(a)(2)'s 'short and plain' standard to the complaint. *Anderson v. Valdez*, 845 F.3d 580, 590 (5th Cir. 2016). In analyzing whether the plaintiff has sufficiently pleaded a constitutional violation under this standard, the court "must accept all well-pleaded facts as true, draw all inferences in favor of the nonmoving party, and view all facts and inferences in the light most favorable to the nonmoving party." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009). Viewing the factual details in McChester's favor, it was not reasonable for an officer in Trooper Richter's position to view the minor inconsistencies in this case as suspicious. Both men acknowledged that they were driving from Las Vegas, Nevada. The fact that McChester mistakenly said both men had lived in New Boston all their lives does not support a reasonable suspicion of criminal activity, nor does the fact that the car's navigation system indicated the men were travelling to Memphis, Tennessee when they said they were driving to New Boston, Texas. Overall, at the pleading stage of the lawsuit, the inconsistencies presented did not create reasonable suspicion to prolong the stop. Therefore, McChester has sufficiently stated a claim against Trooper Richter for a violation of McChester's Fourth Amendment rights.

Turning to the second prong of the qualified immunity defense, the Court finds that no objectively reasonable trooper in Trooper Richter's position could have believed that Trooper Richter's conduct was lawful in light of clearly established law and the information possessed by him at the time. The Court finds ample caselaw establishing that minor, immaterial inconsistencies in answers alone cannot justify a trooper prolonging a traffic stop and calling for a K-9 sniff. *See Spears*, 636 F. App'x at 902; *Estrada*, 459 F.3d at 631; *Pack*, 612 F.3d at 360–61.

The Court ultimately finds that Trooper Richter is not entitled to qualified immunity as to McChester's Fourth Amendment claim at the motion to dismiss stage. Trooper Richter's motion is hereby **DENIED**.

### B.  Defendant Trooper Strange

Defendant Trooper Strange asserts qualified immunity and moves to dismiss all claims brought against him by Plaintiffs McChester and Thompson.[11] Thompson brings causes of action against Strange for violation of his Fourth Amendment rights,[12] violation of his Second Amendment right,[13] and failure to intervene.[14] McChester joins in Thompson's cause of action for failure to intervene.[15] Plaintiffs' claims as to Trooper Strange can be summarized as: Trooper Strange had a duty to intervene when he learned of the unsupportable basis on which Trooper Richter had concluded he had reasonable suspicion to detain the men, and his act and involvement led to Thompson's wrongful arrest, in violation of Thompson's Constitutional rights.[16]

Trooper Strange contends his sole involvement in the matter was arriving on the scene, conducting the K-9 sniff, and assisting in the resulting vehicle search once the K-9 alerted to a scent emanating from the front of the vehicle.[17] Trooper Strange states Plaintiffs fail to plead facts demonstrating Trooper Strange had individual, on-scene knowledge of the facts determining whether Thompson's arrest was proper.[18] He further states that Plaintiffs fail to demonstrate why

---

[11] Strange Mot. 3, ECF No. 14.
[12] Am. Compl. ¶¶ 68–73, ECF No. 12.
[13] *Id.* at ¶¶ 74–80.
[14] *Id.* at ¶¶ 81–88.
[15] *Id.*
[16] *Id.* at ¶¶ 70–80; Pls. Resp. 5, ECF No. 20.
[17] Strange Mot. 6, ECF No. 14.
[18] *Id.* at 7.

it was unreasonable for Trooper Strange to rely on Trooper Richter's probable cause determination leading to Thompson's arrest.[19]

The Court finds that Plaintiffs fail to plead facts sufficient to establish their Fourth and Second Amendment claims. The Amended Complaint, as pertains to Plaintiffs' claims under the Second and Fourth Amendment, focuses on the prolonged traffic stop and Thompson's arrest.[20] Via the Amended Complaint, it was Trooper Richter who initially detained and eventually arrested Thompson, after looking up his criminal history.[21] Trooper Strange reportedly did not arrive until approximately forty minutes after the initial traffic stop.[22] As Trooper Strange is not the officer who prolonged the traffic stop or arrested Thompson, Plaintiffs have not sufficiently pled that Trooper Richter violated Thompson's Fourth and Second Amendment rights. Looking at the second prong of the qualified immunity analysis, Plaintiffs cite to no caselaw to suggest that it was unreasonable for Trooper Strange to rely on Trooper Richter's determination of reasonable suspicion to call for the K-9 search.[23] They further cite no caselaw to suggest that it was unreasonable for Trooper Strange to rely on Trooper Richter's determination of probable cause to arrest Thompson.[24] Finally, Plaintiffs cite to no caselaw to support their contention that Trooper Richter had a duty to intervene on these facts.[25] Therefore, Trooper Strange is entitled to qualified immunity, and Plaintiffs' claims against Trooper Strange are **DISMISSED**.

---

[19] *Id.*
[20] Plaintiffs seemingly do not bring a Fourth Amendment claim that the search of the vehicle itself was unconstitutional (i.e., the troopers conducted a warrantless search of the vehicle that went beyond its constitutional scope), but rather, that the troopers unconstitutionally seized Plaintiffs through the prolonged traffic stop and through Thompson's arrest. The Court **GRANTS** Plaintiffs leave to amend to bring claim regarding the constitutionality of the search itself.
[21] Am. Compl. ¶¶ 17–49, ECF No. 12.
[22] *Id.* at ¶ 42.
[23] *See* Pls. Resp. 4–6, ECF No. 20.
[24] *Id.*
[25] *Id.*

C. <u>Supervisory Defendants McCraw, Mathis, Williams, Alanis, Farris, and Longway</u>

Lastly, the Supervisory Defendants assert qualified immunity and move to dismiss all claims against them. Plaintiffs bring a claim of failure to train against the Supervisory Defendants, alleging that the Supervisory Defendants were aware that DPS Troopers were not properly trained in retrieving accurate information from the Texas and National Crime Information Centers, the databases used by Troopers to run criminal checks.[26] Plaintiffs also claim that the Supervisory Defendants were aware that the resources troopers use to run suspects' criminal backgrounds, the Texas Crime Information Center ("TCIC") and the National Crime Information Center ("NCIC"), provide inaccurate conviction information, and again failed to train DPS Troopers on the subject.[27] Plaintiffs contend the Supervisory Defendants failed to properly train Troopers Richter and Strange in determining whether troopers have the requisite authority to detain citizens.[28] Plaintiffs asserts that the Supervisory Defendants' alleged failure to train was the direct or proximate cause of the alleged constitutional violations complained of in this matter.[29]

Looking at the first prong of the qualified immunity analysis, the Court finds Plaintiffs fail to adequately plead facts to show the Supervisory Defendants violated their constitutional rights. To succeed on a § 1983 claim for failure to supervise or train, the plaintiff must show that: "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009) (quoting *Smith v. Brenoettsy*, 158 F.3d 908, 911–12 (5th Cir. 1998)). To establish deliberate indifference, "a plaintiff usually must demonstrate a pattern of violations and

---

[26] Am Compl. ¶ 59, ECF No. 12.
[27] *Id.* at ¶¶ 60–61.
[28] *Id.* at ¶ 92.
[29] *Id.* at ¶¶ 90–99.

that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation." *Id.* (quoting *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003)). Where a plaintiff fails to establish deliberate indifference, the court need not address the other two prongs of supervisor liability. *Id.* (citing *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 382 (5th Cir.2005)).

In this case, Plaintiffs have not pleaded facts to show the Supervisory Defendants acted with deliberate indifference. Plaintiffs make only conclusory allegations that the Supervisory Defendants were aware that TCIC and NCIC could provide inaccurate conviction information.[30] Plaintiffs further fail to plead facts to establish any pattern or past instances of constitutional violations resulting from any alleged failure to train, other than the isolated incident complained of in this lawsuit.[31] Therefore, the Supervisory Defendants did not act with deliberate indifference and Plaintiffs have not successfully pleaded that the Supervisory Defendants violated their constitutional rights. Therefore, the Supervisory Defendants are entitled to qualified immunity and Plaintiffs claim against the Supervisory Defendants is **DISMISSED**.

### IV.  Conclusion

Therefore, Plaintiffs' claims against Defendant Trooper Strange and the Supervisory Defendants are **DISMISSED**. Therefore, the only claims remaining are Plaintiffs' claims against Trooper Richter. The Court **GRANTS** Plaintiffs leave solely to amend their Fourth Amendment claim against Trooper Strange to address the constitutionality of the vehicle search itself if they feel they can do so. Any amended complaint must be filed on or before **January 30, 2023**.

**SO ORDERED** this **11th day** of **January, 2023**.

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**

---

[30] *Id.* at ¶¶ 60–61.
[31] *See generally* Am. Compl., ECF No. 12.

14