IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| RUSSELL THOMPSON AND<br>DEMETRIUS MCCHESTER, | §<br>§<br>§ | |
| Plaintiffs, | § | |
| v. | §<br>§ | Civil Action No. 7:22-cv-00014-O |
| TROOPER WILL RICHTER, et al., | §<br>§<br>§ | |
| Defendants. | § | |

### ORDER AND OPINION

Before the Court are Defendant Trooper Strange's Motion to Dismiss (ECF No. 25), filed February 16, 2023; and Plaintiffs' Response (ECF No. 30), filed March 9, 2023. For the reasons contained herein, the Motion is hereby **GRANTED in part** and **DENIED in part**.

### I.   Factual Background[1]

This lawsuit arises out of a September 23, 2020 traffic stop. Defendant Trooper Mark Strange filed his original motion to dismiss on June 17, 2022.[2] On January 11, 2023, the Court granted Trooper Strange's motion but gave Plaintiffs Demetrius McChester and Russell Thompson leave to amend their Fourth Amendment claim to address the constitutionality of the vehicle search itself.[3] On January 30, 2023, Plaintiffs filed their Second Amended Complaint.[4] On February 16,

---

[1] At the 12(b)(6) stage, the facts pleaded in Plaintiffs' Second Amended Complaint (ECF No. 23) are taken as true and viewed in the light most favorable to the plaintiffs. *See Sonnier v. State Farm Mut. Auto. Ins.*, 509 F.3d 673, 675 (5th Cir. 2007).
[2] ECF No. 14.
[3] Court Order 14, ECF No. 22.
[4] Sec. Am. Compl., ECF No. 23.

2023, Trooper Strange filed the present Motion to Dismiss.[5] On March 9, 2023, Plaintiffs filed their Response.[6] The Motion is now ripe for the Court's review.

## II. Legal Standard

### a. 12(b)(6) Motion to Dismiss

Rule 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). If a plaintiff fails to satisfy Rule 8(a), the defendant may file a motion to dismiss under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted."

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (cleaned up). A court may not accept legal conclusions as true. *Id.* at 678–79. When well-pleaded factual allegations are present, a court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.*

---

[5] Trooper Strange Mot., ECF No. 25.
[6] Pls. Resp., ECF No. 30.

### b. Qualified Immunity

Trooper Strange asserts that he is entitled to qualified immunity. The doctrine of qualified immunity protects government officials sued pursuant to 42 U.S.C. § 1983 "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* at 815. This doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Courts generally apply the two-pronged analysis established in *Saucier v. Katz*, 533 U.S. 194 (2001), in determining whether a government official is entitled to qualified immunity for an alleged constitutional violation. The first prong of the *Saucier* analysis asks whether the facts alleged or shown are sufficient to make out a violation of a constitutional or federal statutory right. *Saucier*, 533 U.S. at 201. If the record sets out or establishes no violation, no further inquiry is necessary. On the other hand, if the plaintiff sufficiently pleads or establishes the violation of a constitutional or federal statutory right, the Court then turns to the second prong and asks whether the right was clearly established at the time of the government official's alleged misconduct. *Id.* When considering this second prong, the relevant question is whether a reasonable officer could have believed that his conduct was lawful in light of clearly established law and the information possessed by him. *Reese v. Anderson*, 926 F.2d 494, 499 (5th Cir. 1991). If public officials or officers of "reasonable competence could disagree [on whether the conduct is legal], immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *Gibson v. Rich*, 44 F.3d 274,

277 (5th Cir. 1995) (citing *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994)). Courts must consider "whether the violative nature of particular conduct is clearly established" and must undertake this inquiry "in light of the specific context of the case, not as a broad general proposition." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (citations and internal quotations marks omitted).

The Supreme Court has clarified that it is no longer mandatory for courts to consider the two prongs set out in *Saucier* in order, although the Court noted that it may be beneficial to do so. *Pearson,* 555 U.S. at 236. Under *Pearson*, courts are now permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first, in light of the circumstances in the particular case at hand. *Id.*

### III. Analysis

#### a. Plaintiff McChester

"Typically, a passenger without a possessory interest in an automobile lacks standing to complain of its search because his privacy expectation is not infringed." *United States v. Roberson*, 6 F.3d 1088, 1091 (5th Cir. 1993). In this case, the automobile involved was Thompson's 2019 Mercedes Benz CLS250. McChester had no possessory interest in the automobile. Accordingly, McChester lacks standing to bring any claim challenging the constitutionality of Trooper Strange's search of the automobile. Accordingly, any claim brought by McChester regarding the constitutionality of Trooper Strange's search of the vehicle must be **DISMISSED**. Furthermore, as McChester cannot show that Trooper Strange violated his Fourth Amendment rights, Trooper Strange is entitled to qualified immunity against McChester's Fourth Amendment (Unlawful Search) claim.

### b. Plaintiff Thompson

The Court first finds no merit in Thompson's argument that Trooper Strange's search of the vehicle was unconstitutional as it resulted from Trooper Richter's alleged unlawful seizure of Thompson. Any Fourth Amendment claim predicated on this basis is hereby **DISMISSED**.

However, Plaintiff secondly pleads that Trooper Strange's search of the trunk of the Mercedes was unsupported by probable cause and therefore a violation of Thompson's Fourth Amended right because when Trooper Strange searched the trunk of the Mercedes, he knew that the K-9 had alerted to the presence of narcotics in or near the passenger door of the Mercedes.[7]

The Supreme Court has held that the scope of a warrantless search of an automobile is "defined by the object of the search and the places in which there is probable cause to believe that it may be found." *United States v. Ross*, 456 U.S. 798, 824 (1982). For example, the Supreme Court in *Ross* held "[p]robable cause to believe that a container placed in the trunk of a taxi contains contraband or evidence does not justify a search of the entire cab." *Id.* The Fifth Circuit has interpreted *Ross*, stating:

> [I]f officers have probable cause to believe that contraband is in only one part of a car, then they are limited to that area. If, on the other hand, officers have probable cause to believe that contraband is located somewhere in a car, but they don't know exactly where, then they can search the entire vehicle.

*United States v. Seals*, 987 F.2d 1102, 1107 n. 8 (5th Cir. 1993).

In *Seals*, the Fifth Circuit applied this principle to a canine dog sniff of a vehicle. In that case, a canine conducting a canine sniff jumped up on the passenger side window of the vehicle and it was never explained to the court whether the canine's alert encompassed the entire vehicle or just the passenger compartment. *Id.* The court therefore held that "the alert only applied to the passenger compartment," and therefore, the officers only had probable cause to search the

---

[7] Sec. Am. Compl. ¶ 69, ECF No. 23.

passenger compartment. *Id.* The officers did not have probable cause to search the entire car until they searched the passenger compartment and found a glass pipe containing cocaine. *Id.* Subsequent Fifth Circuit cases involving canine sniffs have seemingly adopted and followed this principle. *See United States v. Wakefield*, 4 F.3d 989, 1993 WL 360748, at *4 (5th Cir. 1993) ("When the dogs alerted on the trunk of the car, the officers had probable cause to believe that there were drugs in the trunk, and so did not need a warrant to search the trunk."); *United States v. Thompson*, 996 F.2d 307, 1993 WL 241884, at *1 (5th Cir. 1993) ("The dog's alert to the right rear area of the vehicle and Thompson's nervousness and agitation provided the officers with probable cause to believe that narcotics were concealed in that area.").

In this case, Plaintiff pleads that the canine alerted to the front passenger door of the Mercedes.[8] Trooper Strange has not provided evidence that the canine's alert should be interpreted as an alert to the vehicle as a whole.[9] Therefore, the Court finds that Troopers Strange and Richter only had probable cause to search the alerted-to front passenger area of the vehicle. Furthermore, after searching the alerted area, the troopers found an unopened package of cigarettes and allegedly noted aloud that the cigarettes were the likely cause of the canine alert.[10] At that point, the troopers had found the likely cause of the canine alert and had determined that it was not contraband. Trooper Richter then allegedly told Trooper Strange, "we should just go straight to the trunk."[11] The two troopers searched the trunk and found the loaded handgun.[12]

The Court finds, based on the allegations pled, that Troopers Richter and Strange did not have probable cause to search the trunk of the Thompson's automobile. Therefore, the Court finds

---

[8] Sec. Am. Compl. ¶ 37, ECF No. 23.
[9] *See* Trooper Strange Mot., ECF No. 25.
[10] Sec. Am. Compl. ¶ 38, ECF No. 23.
[11] *Id.*
[12] *Id.* at ¶ 39.

that Thompson has sufficiently pled facts to support his allegation that Trooper Strange conducted an unlawful search in violation of Thompson's Fourth Amendment rights. Thus, the first prong of the qualified immunity analysis is met. Turning to the second prong of the analysis, in light of the above-quoted explicit statements of both the Supreme Court and the Fifth Circuit Court of Appeals, the Court finds that no reasonable officer in Trooper Strange's position would believe he had probable cause to search the trunk of Thompson's automobile. Therefore, the Court finds that Plaintiff's right was clearly established at the time of the search.

Therefore, the Court concludes that, at the motion to dismiss stage, Trooper Strange is not entitled to qualified immunity. Trooper Strange's motion to dismiss Thompson's claim is **DENIED**.

### IV. Conclusion

Accordingly, Trooper Strange's Motion to Dismiss is **GRANTED in part** and **DENIED in part**. Trooper Strange's Motion to Dismiss any Fourth Amendment claim brought against him by Plaintiff McChester is **GRANTED**. Trooper Strange's Motion to Dismiss Plaintiff Thompson's Fourth Amendment (Unlawful Search) claim, specifically regarding the constitutionality of the scope of the vehicle search, is hereby **DENIED**. The sole remaining claims in this lawsuit are Plaintiffs' claims against Trooper Richter and Thompson's Fourth Amendment (Unlawful Search) claim against Trooper Strange.

**SO ORDERED** on this **16th day** of **June, 2023**.

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**