IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| **RUSSELL THOMPSON, et al.,** § | |
| § | |
| *Plaintiffs,* § | |
| § | |
| v. § | **CIVIL ACTION NO. 7:22-CV-00014-O** |
| § | |
| **TROOPER WILL RICHTER, et al.,** § | |
| § | |
| *Defendants*. § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants Trooper Mark Strange ("Strange") and Trooper Will Richter ("Richter") (collectively "Defendants")' Motion for Summary Judgment (ECF No. 60), Brief in Support (ECF No. 61), and Appendix (ECF No. 62), filed May 3, 2024; and Plaintiffs' Response (ECF No. 68) and Appendix (ECF No. 69), filed on May 31, 2024. Having carefully considered the briefing and applicable law, Defendants' motion is **GRANTED** for the reasons stated herein.

### I.   BACKGROUND

Plaintiffs Russell Thompson ("Thompson") and Demetrius McChester ("McChester") (collectively "Plaintiffs") filed this suit against Richter, Strange, and eight other Defendants on February 28, 2022.[1] Plaintiffs filed their Second Amended Complaint on January 30, 2023, which is the live pleading in this case.[2] In two orders, dated January 11, 2023, and June 16, 2023, the Court dismissed all claims and Defendants except for Plaintiffs' claims against Richter and Thompson's Fourth Amendment (Unlawful Search) claim against Strange.[3]

---

[1] Plaintiffs' Original Complaint (ECF No. 1).
[2] ECF No. 23.
[3] *See* ECF Nos. 22, 32.

1

Plaintiffs' claims arise out of a traffic stop that occurred in the early morning hours of September 23, 2022.[4] McChester was driving Thompson's 2019 Mercedes Benz CLS250 (hereinafter the "Vehicle") on Route 287, in Wichita County, when Richter pulled them over for speeding.[5] After McChester pulled the Vehicle over, Richter approached and asked for his license and the insurance.[6] Realizing that the Vehicle was not insured by or registered to McChester, Richter asked Thompson for his driver's license, which Thompson gave to Richter.[7] Thereafter, Richter asked McChester to step out of the Vehicle.[8] Once McChester was out of the Vehicle, Richter independently questioned both McChester and Thompson about where they were coming from, where they were heading, and with whom they had associated during their trip.[9] Both men answered Richter's questions.[10]

After questioning Plaintiffs, Richter asked for consent to search the vehicle, and was denied.[11] At this point, Richter returned to his squad car and called Strange.[12] On that call, Richter requested that Strange bring his K-9, Norman, to the scene so that Norman could conduct a free-air sniff of the Vehicle.[13] Richter, and Norman, arrived roughly twenty-seven minutes later (thirty-seven minutes into the stop) and conducted a free-air sniff of the vehicle.[14] During the free-air sniff, Norman alerted to multiple areas of the Vehicle, including the passenger-side rear-tail-

---

[4] Plaintiffs' Second Amended Complaint, ECF No. 23 ("Pls.' Sec. Am. Compl.") at 2; Defendants' Brief in Support of their Motion for Summary Judgment, ECF No. 61 ("Defs.' Br.") at 2.
[5] *Id.*; Defendants' Appendix in Support of their Motion for Summary Judgment, ECF No. 62 ("Defs.' App.") at 4–11.
[6] Pls.' Sec. Am. Compl. at 3; Defs.' Br. at 2; Defs.' App. at 6.
[7] *Id.*
[8] *Id.*
[9] Pls.' Sec. Am. Compl. at 3; Defs.' Br. at 2–3; Defs.' App. at 6.
[10] *Id.*
[11] Pls.' Sec. Am. Compl. at 4–5; Defs.' Br. at 3; Defs.' App. at 7.
[12] *Id.*
[13] *Id.*
[14] Pls.' Sec. Am. Compl. at 5; Defs.' Br. at 4; Defs.' App. at 3 (Strange's Bodycam Video, time stamp 1:12–2:15), 8.

2

light and passenger door.[15] Because Norman alerted to the presence of drugs, Defendants searched the inside of the Vehicle.[16] Defendants began their search in the cabin of the Vehicle, which allegedly smelled of marijuana and contained Swisher Sweets[17] and a receipt from a dispensary in Las Vegas.[18] After completing the search of the cabin, Defendants began searching the trunk, where Strange found a loaded handgun.[19] Richer then returned to his patrol car and, for the first time, checked Thompson's criminal background.[20] Thompson's criminal background report showed a felony conviction.[21] Based on this information, Richter arrested Thompson for being a felon in possession of a firearm.[22] A few days later, the charges against Thompson were dropped[23] because it was discovered that Thompson's felony conviction was reduced—post-conviction—to a gross misdemeanor due to Thompson successfully completing his probation.[24]

## II.  LEGAL STANDARD

The moving party is entitled to summary judgment as a matter of law when the pleadings and evidence before the court show that no genuine issue exists as to any material fact. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "To determine whether there

---

[15] Pls.' Sec. Am. Compl. at 6–7; Defs.' Br. at 4; Defs.' App. at 3 (Strange's Bodycam Video, time stamp 1:12–2:15), 8, 59.
[16] Pls.' Sec. Am. Compl. at 7; Defs.' Br. at 4–5; Defs.' App. at 2 (Richter's Bodycam Video, time stamp: 43:00–52:00), 3 (Strange's Bodycam Video, time stamp: 2:50–11:30), 8, 59.
[17] Swisher Sweets are not illegal but are commonly used for smoking marijuana. *See* Daniel P. Giovenco, Erin J. Miller Lo, M. Jane Lewis, and Cristine D. Delnevo, *"They're Pretty Much Made for Blunts": Product Features That Facilitate Marijuana Use Among Young Adult Cigarillo Users in the United States*, NAT'L LIBR. OF MED., Aug. 3, 2016, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5896518/ (providing that popular cigarillo brands like Swisher Sweets are believed to "design their products to simplify blunt-making," and commonly used to make "blunts").
[18] Pls.' Sec. Am. Compl. at 7; Defs.' Br. at 4–5; Defs.' App. at 2 (Richter's Bodycam Video, time stamp: 43:00–52:00, 3 (Strange's Bodycam Video, time stamp: 2:50–11:30), 8, 59.
[19] *Id.*
[20] Pls.' Sec. Am. Compl. at 7; Defs.' Br. at 5; Defs.' App. at 8.
[21] Defs.' App. at 8, 31.
[22] Pls.' Sec. Am. Compl. at 7; Defs.' Br. at 5; Defs.' App. at 8.
[23] Defs.' App. at 48.
[24] Defs.' App. at 75.

are any genuine issues of material fact, the court must first consult the applicable substantive law to ascertain what factual issues are material." *Lavespere v. Niagra Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990) (footnote omitted). Disposing of a case through summary judgment serves to reinforce the purpose of the Federal Rules of Civil Procedure "to achieve the just, speedy, and inexpensive determination of actions, and when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1197 (5th Cir. 1986) (footnote omitted).

All of the evidence must be viewed in the light most favorable to the nonmovant, but the movant may not satisfy his or her summary judgment burden with either conclusory allegations or unsubstantiated assertions. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citations omitted); *Calbillo v. Cavender Oldsmobile, Inc.,* 288 F.3d 721, 725 (5th Cir. 2002) (citations omitted). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "An issue is 'genuine' if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001) (cleaned up). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. Although the Court is required to consider only the cited materials, it may consider other materials in the record. FED. R. CIV. P. 56(c)(3). Nevertheless, "Rule 56 does not impose on the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992). Parties should "identify specific evidence in the record, and . . . articulate the 'precise manner' in which that evidence support[s] their claim." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (citations omitted).

"If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim." *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship*, 520 F.3d 409, 412 (5th Cir. 2008) (citing *Celotex*, 477 U.S. at 325). "The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists." *Id*.

### III.   ANALYSIS

In this case, Plaintiffs' remaining claims[25] against Defendants are as follows: (1) Thompson's and McChester's claims against Richter for violating their Fourth Amendment right to be free from unlawful seizure (extension of the traffic stop without reasonable suspicion); (2) Thompson's claim against Richter for violating his Fourth Amendment right to be free from unlawful search (search without probable cause); (3) Thompson's claim against Richter for violating his Fourth Amendment right to be free from unlawful arrest (arrest without probable cause); (4) Thompson's claim against Richter for violating his Second Amendment right to a weapon; (5) Thompson's claim against Richter for violating his Fourteenth Amendment right to due process; and (6) Thompson's claim against Strange for violating his Fourth Amendment right to be free from unlawful search (search without probable cause).[26]

In their Motion for Summary Judgment, Defendants argue that the Court should grant summary judgment in their favor because they are entitled to qualified immunity on all of Plaintiffs' claims.[27] In response, Plaintiffs concede that: (1) their Fourteenth Amendment claims

---

[25] All claims are brought under 42 U.S.C. § 1983. *See generally* Pls.' Sec. Am. Compl.
[26] *See* Plaintiffs' Response to Defendants' Motion for Summary Judgment, ECF No. 68 (Pls.' Resp") at 5–6 ; *see also* ECF No. 32.
[27] Defs.' Br. at 6–18.

are addressed by their Fourth Amendment claims; (2) there is no clearly established law regarding their Second Amendment claim;[28] and (3) their unlawful search and unlawful arrest claims are inexplicitly tied to their unlawful detention claim.[29]  However, Plaintiffs do claim that Defendants are not entitled to qualified immunity on the unlawful search and unlawful arrest claims because they are not entitled to qualified immunity on the unlawful detention claim.  Specifically, Plaintiffs argue that Richter violated a "clearly established right to be free from unreasonable police detention" and, thus, everything that subsequently occurred was in violation of Plaintiffs' Constitutional rights.[30]

Because there is sufficient evidence to support the constitutionality of Defendants' search of the Vehicle (Norman alerted to multiple areas of the Vehicle, including the trunk)[31] and Thompson's arrest (the criminal report incorrectly showed a felony conviction for Thompson),[32] the Court finds that those claims wholly depend on whether Richter's detention of Plaintiffs exceeded his reasonable suspicion.  Consequently, the question before the Court is whether any

---

[28] Pl.'s Resp. at 12, n.35.  Because Plaintiffs' Fourteenth Amendment claim is covered by the Fourth Amendment claims and there is no clearly established law regarding their Second Amendment claim, Defendants' Motion for Summary Judgment is **GRANTED** as to those claims.

[29] While Plaintiffs do not explicitly concede this point, it is evident—from their one paragraph of argument on these claims—that they understand that their unlawful search and unlawful arrest claims are tied to their unlawful detention claims.  *See* Pls.' Resp. at 24 (arguing that, because there was not a reasonable suspicion to justify the prolonged detention, there was not probable cause for the search and, thus, the arrest was also improper).

[30] *Id.* at 12, 12–24.

[31] It is well-settled in the Fifth Circuit "that an alert by a drug-detecting dog provides probable cause to search" a vehicle.  *United States v. Sanchez-Pena*, 336 F.3d 431, 444 (5th Cir. 2003).  Thus, if Richter did not violate clearly established law by extending the stop for a free-air sniff, then Richter and Strange are entitled to qualified immunity on Plaintiffs' unlawful search claims.

[32] Arrests must be made with probable cause, which the Supreme Court has defined as the "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979).  This is an objective standard based only on the facts known to the officer at the time of the arrest.  *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009).  Thus, because the report showed that Thompson had a felony conviction—a fact that Richter could not known to be incorrect—Richter had probable cause to believe that Thompson was a felon in possession of a handgun.

constitutional violation committed by Richter was clearly established because his articulated reasonable suspicion of drug activity, by the time he completed—or should have completed—his investigation into the alleged speeding violation, was insufficient to support the prolonged detention.[33]  As discussed *infra*, for the Court to answer this question it must first answer the preliminary question of when the investigation should have been completed.  Thus, the Court will begin with the latter and conclude with the former.

### A. Legal Standards

#### 1. The Fourth Amendment

The Fourth Amendment prohibits "unreasonable searches and seizures."  U.S. Const. amend. IV.  "The stopping of a vehicle and detention of its occupants constitutes a 'seizure' under the Fourth Amendment."  *United States v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004).  "We analyze the legality of traffic stops for Fourth Amendment purposes under the standard articulated by the Supreme Court in *Terry v. Ohio*, 392 U.S. 1 (1968)."  *United States v. Smith*, 952 F.3d 642, 647 (5th Cir. 2020) (citation omitted).  Under *Terry*, "the legality of police investigatory stops is tested in two parts."  *Brigham*, 382 F.3d at 506.   First, courts must determine whether the stop was justified at its inception.  *United States v. Pack*, 612 F.3d 341, 350 (5th Cir. 2010).  "For a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle."  *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005).  If the stop was justified, courts ask whether "the officer's subsequent actions were reasonably related in scope to the circumstances that caused him to stop the vehicle in the first place."  *Pack*, 612 F.3d

---

[33] Because Defendants' Motion for Summary Judgment focuses solely on whether they are entitled to qualified immunity, and not on whether any Constitutional violations actually occurred, the Court focuses its analysis only on whether the alleged violations were clearly established in light of the circumstances of this case.

7

at 350. "A seizure for a traffic violation justifies a police investigation of that violation." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015). As part of that investigation, "an officer may examine driver's licenses and vehicle registrations and run computer checks." *Pack*, 612 F.3d at 350. "He may also ask about the purpose and itinerary of the occupants' trip. . . ." *Id.* And he may ask "similar question[s] of the vehicle's occupants to verify the information provided by the driver." *Brigham*, 382 F.3d at 508 (quoting *United States v. Linkous*, 285 F.3d 716, 719 (8th Cir. 2002)).

There is no hard-and-fast time limit for reasonable traffic stops. Rather, the stop "must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Id.* at 507. "[T]he tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop and attend to related safety concerns." *Rodriguez*, 575 U.S. at 354 (citation omitted). "Authority for the seizure . . . ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Id.* "If the officer develops reasonable suspicion of additional criminal activity during his investigation of the circumstances that originally caused the stop, he may further detain its occupants for a reasonable time while appropriately attempting to dispel this reasonable suspicion." *Pack*, 612 F.3d at 350.

"[R]easonable suspicion exists when the officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the search and seizure." *Lopez-Moreno*, 420 F.3d at 430. "Reasonable suspicion is a low threshold" and requires only "some minimal level of objective justification." *United States v. Castillo*, 804 F.3d 361, 367 (5th Cir. 2015) (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). Reasonable suspicion demands something more than a "mere 'hunch'" but "'considerably less than proof of wrongdoing

by a preponderance of the evidence,' and 'obviously less' than is necessary for probable cause." *Navarette v. California*, 572 U.S. 393, 397 (2014) (internal citations omitted).

The Court's inquiry views "the totality of the circumstances and the collective knowledge and experience of the officer." *United States v. Estrada*, 459 F.3d 627, 631–32 (5th Cir. 2006). Courts are to give due weight to the officer's factual inferences because officers may "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quoting *United States v. Cortez*, 449 U.S. 411, 418 (1981)).

### 2. Qualified Immunity

The doctrine of qualified immunity "protects government officials from civil damages liability when their actions could reasonably have been believed to be legal." *Anderson v. Valdez*, 845 F.3d 580, 599 (5th Cir. 2016). "This immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 335(1986)). "Accordingly, we do not deny immunity unless 'existing precedent [has] placed the statutory or constitutional question beyond debate.'" *Id.* at 599–600 (citation omitted). To defeat qualified immunity, Plaintiffs must show: "(1) that the official violated a statutory or constitutional right; and (2) that the right was 'clearly established' at the time of the challenged conduct." *Id.* at 600.

"If the defendant's actions violated a clearly established constitutional right" courts examine "whether qualified immunity is still appropriate because the defendant's actions were objectively reasonable in light of law which was clearly established at the time of the disputed action." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (internal quotations omitted). Courts must focus on the state of the law at the time of the incident and whether it provided fair

9

warning to the defendant that his conduct was unconstitutional. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014). The caselaw must establish beyond debate that the officer's conduct violated then-clearly established law. *Baldwin v. Dorsey*, 964 F.3d 320, 326 (5th Cir. 2020). Plaintiffs must "identify a case in which an officer acting under similar circumstances was held to [have committed a constitutional violation] and explain why the case clearly proscribed the conduct of the officer." *Joseph on behalf of Estate of Joseph v. Bartlett*, 981 F.3d 319, 345 (5th Cir. 2020) (citation amended). "It is the plaintiff's burden to find a case in his favor that does not define the law at a high level of generality." *Rich v. Palko*, 920 F.3d 288, 294 (5th Cir. 2019) (quotations and citation omitted).

### B. Defendants Are Entitled to Qualified Immunity

As a preliminary matter, the parties do not dispute that the initial stop was justified. Thus, the Court must determine whether Richter's extension of the stop violated clearly established law. Plaintiffs argue that it was clearly established that Richter did not have reasonable suspicion to prolong the stop and conduct a dog sniff. A "police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures." *Rodriguez*, 575 U.S. at 350. "A seizure justified only by a police-observed traffic violation, therefore, 'become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission' of issuing a ticket for the violation." *Id.* at 350–51. "Once the purpose of a valid traffic stop has been completed and an officer's initial suspicions have been verified or dispelled, the detention must end unless there is additional reasonable suspicion supported by articulable facts." *Estrada*, 459 F.3d at 631. "If the officer develops reasonable suspicion of additional criminal activity during his investigation of the circumstances that originally caused the stop, he may further detain [the] occupants [of the Vehicle] for a reasonable time while

appropriately attempting to dispel this reasonable suspicion." *United States v. Andres*, 703 F.3d 828, 833 (5th Cir. 2013) (quoting *Pack*, 612 F.3d at 350). Reasonable suspicion exists "when the detaining officer can point to specific and articulable facts that, when taken together with rational inferences from those facts, reasonably warrant the search and seizure." *Pack*, 612 F.3d at 352 (quoting *Estrada*, at 459 F.3d at 631).

### 1. The relevant point in time for the Court's reasonable suspicion analysis is after Richter had completed his preliminary questioning of Plaintiffs.

As discussed *supra*, because the Court must determine whether Richter developed reasonable suspicion of additional criminal activity during his investigation of the circumstances that originally caused the stop, the Court must first determine when the tasks tied to the traffic infraction were—or reasonably should have been—completed. Because Richter never completed the traffic stop with regard to the alleged speeding violation,[34] the Court must determine when Richter "should have completed" his investigation into the alleged speeding violation. There are two easily identifiable points at which Richter could have potentially completed all of the tasks tied to the traffic infraction without extending the stop. The first instance occurred prior to Richter separating Plaintiffs for preliminary questioning. The second occurred after Richter had questioned Plaintiffs separately.

The Court finds that Richter's separation of Plaintiffs to complete his initial questioning was not improper. The Fifth Circuit has routinely held that an officer may examine driver's licenses and vehicle registrations and run computer checks as part of his investigation into the circumstances that originally caused the stop. *Pack*, 612 F.3d at 350 (internal citation omitted). He may also ask about the purpose and itinerary of the occupants' trip as part of this investigation,

---

[34] *See* Pls.' Sec. Am. Compl. at 7–8; *see also* Defs.' App. at 5–11 (Richter's and Strange's stop and arrest report, which does not indicate the issuance of a ticket or warning), 2 (Richter's Bodycam Video).

11

because courts consider these questions to be reasonably related in scope to his investigation of the circumstances that caused the stop. *Id.* Additionally, the Fifth Circuit has held that an officer may ask questions on subjects unrelated to the circumstances that caused the stop, so long as these unrelated questions do not extend the duration of the stop. *Id.* (citing *United States v. Shabazz*, 993 F.2d 431, 436–37 (5th Cir. 1993).

"The reasoning behind this rule is that the Fourth Amendment protects against detention, not questioning." *Pack*, 612 F.3d at 350. "Thus, no Fourth Amendment harm is done where the officer questions the occupants of a vehicle while waiting for routine computer checks to be processed." *Id., see also Shabazz*, 993 F.2d at 436–37. Just because the Fourth Amendment allows officers to question the occupants of a vehicle while waiting for routine computer checks to be processed does not mean that officers must initiate their routine checks before asking basic questions of the occupants of a vehicle. *See Pack*, 612 F.3d at 354 (citing *Brigham* at 508, 511 (providing that officers are not required to initiate routine checks before asking basic questions)).

In this case, the evidence is clear that prior to separating Plaintiffs, Richter had not asked Plaintiffs any of the basic questions, such as their travel itinerary, that he is allowed to ask as a part of his investigation into the alleged speeding violation.[35] The evidence further shows that, when Richter separated the men, he completed his preliminary questioning of both men in approximately five minutes and he asked them only basic questions such as where they were traveling from, where they were going, and with whom they had associated.[36] By the time Richter had completed his preliminary questioning and asked Plaintiffs to search the vehicle, less than ten

---

[35] *See* Defs.' App. at 7; *see also* Plaintiffs' Appendix in Support of their Response, ECF No. 69 ("Pls.' App.") at 101–03 (Richter testifying that he was not sure where Plaintiff were coming from because he "hadn't asked anything at that time," just wanted to get their story, and had been trained to separate the parties for questioning.

[36] *See* Pls.' Sec. Am Compl. at 3, *see also* Defs.' App. at 2 (Richter's Bodycam Video).

minutes had elapsed since the stop began.[37] The Court cannot find, and Plaintiffs have not provided, any precedent that says an officer may not separate the occupants of a vehicle for basic questioning, especially in light of the fact that Plaintiffs were traveling in the early morning hours through an area Richter knew to be a drug corridor. In fact, "[i]t is well established that, once a vehicle has been lawfully stopped, officers may order the driver out of the vehicle without violating the Fourth Amendment due to concerns for officer safety." *See, e.g., United States v. Martinez*, 102 F.4th 677, 686 n.1 (5th Cir. 2024) (citing *Pennsylvania v. Mimms*, 434 U.S. 106, 111 (1977); *United States v. Meredith*, 480 F.3d 366, 369 (5th Cir. 2007)). Additionally, the Fifth Circuit has held that "the Fourth Amendment permits '[a] police officer [to] undertake . . . questioning of the vehicle's occupants to verify the information provided by the driver.'" *Pack*, 612 F.3d at 351 (quoting *Brigham*, 382 F.3d at 508). Consequently, the Court concludes that Richter did not improperly separate Plaintiffs to ask them basic questions related to the traffic stop.[38] Accordingly, the Court must determine whether Richter violated clearly established law by extending the stop after he completed his preliminary questioning of Plaintiffs.

### 2. Defendants are entitled to qualified immunity because Plaintiffs have failed to show that any Constitutional violation that may have occurred was clearly established.

Defendants argue that Plaintiffs have not shown that any constitutional violation Richter may have committed was clearly established because Plaintiffs have failed to provide a case where the court found that the officer's extension of the stop was unconstitutional under sufficiently similar facts. Specifically, Defendants assert that Richter had developed a reasonable suspicion of

---

[37] *See* Pls.' Sec. Am. Compl. at 4; *see also* Defs.' App. at 2 (Richter's Bodycam Video, time stamp: 3:01–8:39).
[38] The Court's decision is bolstered by the Fifth Circuit's granting of qualified immunity in a case where the officer separated the driver and occupants of a vehicle—immediately after receiving the plaintiff's driver's license and registration—to ask them basic questions about their travel itinerary. *Weisshaus v. Teichelman*, 2024 WL 620372, at *1 (5th Cir. Feb. 14, 2024).

13

additional criminal activity to justify extending the stop because: (1) Plaintiffs were traveling in the early morning hours on U.S. 287—a stretch of highway that Richter knew to be a common drug corridor; (2) Plaintiffs stated that they were travelling to New Boston, Texas, but the Vehicle's Global Positioning System ("GPS") was programmed such that Memphis, Tennessee was the final destination; (3) the Vehicle was registered in Texas, but the owner was licensed in Georgia; (4) McChester claimed that he and Thompson had lived all of their lives in New Boston, Texas, but Thompson had a Georgia driver's license and later stated that he had previously lived in California, Georgia, and Las Vegas; (5) the Vehicle had temporary tags, which Richter knew to often be used in furtherance of criminal activity; (6) McChester displayed multiple signs of evasiveness, "including facing away while talking, fleeting eye contact, swallowing hard, taking long pauses before answering questions, repeating questions, answering vaguely, and changing answers;" and (6) McChester's and Thompson's stories varied regarding why they visited California and Las Vegas, who they visited, and how much time they spent in each place.[39]  In response, Plaintiffs assert that Richter had received sufficient information to dispel all of his suspicions except for some minor inconsistencies in Plaintiffs' stories.[40]  Specifically, Plaintiffs claim that: (1) there is little probative value to driving in a known drug corridor; (2) Richter had run the temporary tags into his computer and the information matched what Richer learned when he obtained Plaintiffs' driver's licenses and the proof of insurance; (3) McChester was simply cold and not acting nervous or evasive; and (4) while the stories had some inconsistencies they were generally the same.[41]

---

[39] Defs.' Br. at 9–10.
[40] Pls.' Resp. at 15–19.
[41] *Id.*

14

As discussed above, Plaintiffs must "identify a case in which an officer acting under similar circumstances was held to have [committed a constitutional violation] and explain why the case clearly proscribed the conduct of the officer." *Estate of Joseph*, 981 F.3d at 345. Here, Plaintiffs cite to *United States v. Santiago*,[42] and argue that the facts are similar enough to establish that Richter's extension of the stop violate clearly established law. 310 F.3d 336 (5th Cir. 2002).[43] In contrast, Defendants cite to *Weisshaus v. Tiechelman*, for the proposition that this case is distinguishable from *Santiago* and, thus, any constitutional violation Richter may have committed was not clearly established.[44]

In *Santiago*, the officer stopped Santiago for a flashing light hazard to oncoming traffic. The officer claimed he was suspicious because Santiago said they were traveling on vacation to Atlanta for one week before his kids started school, but his wife, who was in the car, said they were staying for 2-3 weeks. Further, the officer knew that school in Louisiana had already started. The officer also noted nervousness when he asked Santiago for his license, and the officer was suspicious because there was another woman's name on Santiago's car's registration. To dispel this, Santiago explained that school started later where he lived, hence the late travel date, and he also explained that the other woman on the registration was his ex-wife, but the car was his. The officer ran criminal history checks, and despite them coming back negative, and the car not being reported as stolen, the officer extended the stop and ultimately conducted a canine drug sniff. The Fifth Circuit found that the driver and passenger of a vehicle appearing nervous and having minor

---

[42] The Fifth Circuit has previously called into question whether *Santiago* is still good law or whether *United States v. Brigham*, implicitly overruled it. *See Pack*, 612 F.3d at 358-59. However, because *Santiago* has not been explicitly overruled, the Court will consider whether the facts of this case are sufficiently similar to those in *Santiago* such that Richter violated a clearly established law.
[43] Pls.' Resp. at 21–23.
[44] Defs.' Br. at 10–11.

15

inconsistencies in their stories was not enough for the officer to reasonably extend the stop and, thus, the officer violated Santiago's Fourth Amendment rights. *Id.* at 342.

In *Weisshaus*, the officer stopped the plaintiff for speeding and displaying an obscured license plate and registration insignia. The officer obtained the plaintiff's driver's license and registration. Immediately after, the officer asked the plaintiff to step out of the vehicle. The officer then proceeded to question the plaintiff and the occupants of the vehicle separately. Subsequently, the officer extended the stop to conduct an open-air sniff of the vehicle. Ultimately, after conducting a search of the vehicle, the officer found no narcotics and the plaintiff was allowed to leave. The officer articulated that he extended the stop because the plaintiff's and occupant's stories had inconsistencies, they were traveling on a known drug highway with an out-of-state license, there was no familial relationship, and the non-driver was acting nervous, scared, and avoided eye contact. The Fifth Circuit held that the officer did not violate a clearly established law as the facts were distinguishable from *Santiago* because the officer had not dispelled his suspicions and the plaintiff was traveling on a known drug highway, with a woman who "appeared to be younger" and had no familial connection. *Weisshaus*, 2024 WL 620372, at *4.

The Court finds that this case, like *Weisshaus*, is distinguishable from *Santiago* and, thus, that Plaintiffs have not shown that any constitutional violation Richter may have committed was clearly established. The Fifth Circuit has held that the reasonable suspicion determination "must be made based on the totality of the circumstances and the collective knowledge and experience of the officer or officers." *Estrada*, 459 F.3d at 631–32. Further, courts "must allow law enforcement officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *Brigham*, 382 F.3d at 507 (quoting *Arvizu*, 534 U.S. at 273). Furthermore, the

16

Fifth Circuit has previously found reasonable suspicion for the extension of a stop "where the driver was unable to answer questions as to travel plans and where his story diverged from that of other occupants while traveling on a known drug corridor." *Weisshaus* 2024 WL 620372, at *3 (citing *Smith*, 952 F.3d at 649 (stating "we have consistently considered travel along known drug corridors as a relevant—even if not dispositive—piece of the reasonable suspicion puzzle.")).

In this case, unlike in *Santiago*, Richter articulated that—in addition to the inconsistencies in Plaintiffs' stories[45] and the fact that McChester appeared nervous[46]—his suspicions had not been dispelled when he asked to search the Vehicle because: (1) Plaintiffs were traveling, at an unusual time, in a known drug corridor;[47] (2) the Vehicle was registered in Texas, but the owner, Thompson, was licensed in Georgia;[48] (3) the Vehicle had temporary tags, which are commonly used in furtherance of criminal activity;[49] and (4) Plaintiffs said they were driving to New Boston, Texas, but the GPS was programmed with Memphis, Tennessee, as the final destination.[50] Therefore, pertinent facts present in this case, differ from those in *Santiago*. *See Weisshaus,* 2024 WL 620372, at *4 (finding that the totality of the circumstances supported reasonable suspicion where the plaintiff was traveling on a known drug highway, with a woman who "appeared to be younger" and had no familial connection); *see also Smith*, 952 F.3d at 649 (finding that the totality

---

[45] Most notably McChester indicated that Plaintiffs were in Las Vegas to visit army buddies and Thompson stated that he went to see his doctor. Defs.' App. at 6–7, 101–110.
[46] Plaintiffs argue that McChester was not nervous or acting evasively, but rather he "was simply cold." Pls.' Resp. at 18. However, even if true, Richter's suspicions at the time could not have been alleviated because McChester never told Richter that he was cold. Thus, because courts "allow law enforcement officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them," this fact—while alone is insufficient—plays a part in evaluating the totality of the circumstances. *Brigham*, 382 F.3d at 507.
[47] Pls.' Sec. Am. Compl. at 2; Defs.' Br. at 2; Defs.' App. at 6.
[48] Pls.' Sec. Am. Compl. at 4; Defs.' Br. at 9; Defs.' App. at 6.
[49] Plaintiffs argue that Richter had already run the temporary tags and the information that check returned should have alleviated his suspicion. However, by Plaintiffs' own admission, "it is unclear from Richter's body camera forage whether [he] heard the results of the temporary tag check." Pls.' Resp. at 8 (cleaned up); *see generally* Defs.' App. at 2 (Richter's Bodycam Video).
[50] Pls.' Sec. Am. Compl. at 5; Defs.' App. at 2 (Richter's Bodycam Video, time stamp: 10:50).

of the circumstances supported reasonable suspicion where the stories of the driver and the non-relative passengers were inconsistent, the driver's story seemed implausible, and that they were traveling on an interstate frequently used to transport contraband). "Accordingly, the Court cannot say it is 'beyond debate' that [Richter] did not have reasonable suspicion to extend the stop. *Weisshaus,* 2024 WL 620372, at *4 (quoting *Tolan*, 572 U.S. at 656). Consequently, even if Richter did not have reasonable suspicion to prolong the stop to conduct the dog sniff, any violation was not clearly established.

Finally, Plaintiffs argue that Richter created undue delay because he "questioned McChester and Thompson about their employment, about Thompson's military service, and about Thompson's children, *all while Richter waited for Strange to arrive*."[51] Plaintiffs' argument fails because Richter's additional questioning was not designed to, nor did it, create any additional delay. Immediately after Plaintiffs denied his request to search the Vehicle, Richter acted diligently by returning to his squad car and called for Strange to bring the dog, Norman.[52] *See United States v. Phillips*, No. 22-50745, 2024 WL 323498, at *4 (5th Cir. Jan. 29, 2024) (stating "the deputy acted diligently by calling for the dog sniff immediately after [the plaintiff] refused to consent to a search of his vehicle.") (internal citations omitted). Richter had no control over how long it took for Strange and Norman to arrive on scene and caused no delay by continuing to question Plaintiffs while they waited.[53] Moreover, to the extent Plaintiffs argue that it was an undue delay to wait twenty-seven minutes for Strange and Norman to arrive, the Fifth Circuit has held otherwise. *Phillips*, 2024 WL 323498, at *4 (twenty-one-minute wait for a drug dog to arrive

---

[51] Pls.' Resp. at 23–24 (emphasis added).
[52] Defs.' App. at 2 (Richter's Bodycam Video, time stamp: 8:39-11:31).
[53] The Fifth Circuit has held that an officer may ask questions on subjects unrelated to the circumstances that caused the stop, so long as these unrelated questions do not extend the duration of the stop. *Shabazz*, 993 F.2d at 436–37.

on scene); *Pack*, 612 F.3d at 361–62 (thirty-five-minute stop); *United States v. Galindo*, 447 F. App'x 633, 636 (5th Cir. 2011) (forty-five-minute delay before calling for K-9 unit).

Plaintiffs have failed to identify a case which shows that, under sufficiently similar circumstances, an officer was found to have violated a plaintiff's Constitutional rights by extending a traffic stop to conduct a free-air sniff. Thus, Richter did not violate a clearly established right and is entitled to qualified immunity on Plaintiffs' unlawful seizure (extension of the traffic stop without reasonable suspicion) claims. Further, because, as discussed *supra*, Plaintiffs' unlawful search and unlawful arrest claims are tied to their unlawful seizure claims, Defendants are also entitled to qualified immunity on those claims. Accordingly, because Defendants are entitled to qualified immunity on all of Plaintiffs' claims, Defendants' Motion for Summary Judgment (ECF No. 60) is **GRANTED**.

## IV.   CONCLUSION

For the reasons set out above, Defendants' Motion for Summary Judgment (ECF No. 60) is **GRANTED**.

**SO ORDERED** this **9th** day of **July 2024**.

Reed O'Connor
UNITED STATES DISTRICT JUDGE